UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

VICKI ANN BECKETT,           )
                             )
        *Plaintiff*,         )
                             )
v.                           )           No. 1:17-cv-00303-TWP-SKL
                             )
COMMISSIONER OF SOCIAL SECURITY, )
                             )
        *Defendant*.         )

## REPORT AND RECOMMENDATION

Plaintiff Vicki Ann Beckett ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment[1] [Docs. 17 & 21] and filed supporting briefs [Docs. 18 & 22]. This matter is now ripe. For the reasons stated below, I **RECOMMEND** that: (1) Plaintiff's motion for summary judgment [Doc. 17] be **GRANTED IN PART**; (2) the Commissioner's motion for summary judgment [Doc. 21] be **DENIED**; and the decision of the Commissioner be **REVERSED AND REMANDED** for further proceedings consistent with this report and recommendation.

## I.     ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DIB on July 25, 2013 [Doc. 11 ("Tr.") at Page ID # 260], alleging disability beginning January 29, 2013 (Tr. 216). Plaintiff's claims were denied initially

---

[1] Plaintiff also filed a separate motion for judgment on the pleadings, which included a supporting memorandum as an attachment to the motion [Doc. 15]. These documents are identical to Plaintiff's filings at Docket Nos. 17 & 18. I therefore **RECOMMEND** the Clerk be directed to **TERMINATE** Docket No. 15.

and on reconsideration at the agency level. On July 1, 2014, Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 134-35), which was held in Chattanooga, Tennessee on February 5, 2016 (Tr. 49-82). On August 25, 2016, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset date through the date of decision (Tr. 22). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born on November 17, 1957, making her as an "individual of advanced age" on the alleged onset date (Tr. 21). She graduated high school and attended college for two years; she also completed cosmetology school (Tr. 308). She is able to communicate in English (Tr. 21). She has past relevant work as a bus driver and a trailer truck driver, both semi-skilled vocations requiring medium levels of exertion (Tr. 21, 55-56).

### B.     Medical Records

In her Disability Report, Plaintiff alleged disability due to "lung surgery, heart condition, back and knee problems, diabetes, high blood pressure, breathing difficulty, 30% blockage in aorta, severe tendinitis" (Tr. 307). Plaintiff sets forth a detailed, factual recitation of the medical evidence [Doc. 18 at Page ID # 1089-96]. The ALJ also discusses some of the relevant medical evidence (Tr. 13-16, 18-20), and Defendant describes the medical evidence relevant to Plaintiff's arguments [Doc. 22 at Page ID # 1125-39]. There is no need to summarize the medical records herein, but all relevant records have been thoroughly reviewed.

2

### C.    Hearing Testimony

At the hearing before the ALJ on February 5, 2016, Plaintiff and a vocational expert ("VE") testified.  Again, while there is no need to summarize the transcript of the testimony from the hearing (Tr. 49-82), it has been carefully reviewed.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through September 30, 2017 (Tr. 12). At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 29, 2013, the alleged onset date (Tr. 12). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease ("DDD"), diabetes mellitus ("DM"), coronary artery disease ("CAD"), chronic obstructive pulmonary disease ("COPD"), hearing loss, and chronic headaches (Tr. 12). The ALJ also found Plaintiff had several non-severe impairments, including lung nodule status post resection, mild obstructive sleep apnea, mild non-proliferative diabetic retinopathy, diverticulitis, obesity, depression and anxiety (Tr. 12-17). At step three, the ALJ found Plaintiff does not have an impairment or combination of impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17).

4

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb ladders, ropes, and scaffolds; she can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and, she must avoid concentrated exposure to loud noise." (Tr. 17). At step four, the ALJ found Plaintiff was unable to perform her past relevant work (Tr. 20). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy including stock selector, patient transporter, and cleaner, which are all unskilled vocations (Tr. 21-22). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision (Tr. 22).

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed and/or remanded under sentence four for several reasons: (1) "The ALJ erred in his analysis of plaintiff's mental health limitations," including in his analysis of "treating source opinions regarding plaintiff's mental health impairments" and by concluding the mental health impairments were non-severe. (2) "The ALJ erred by failing to mention, consider, or weigh the opinion of consulting psychological examiner Caryn Brown, Psy. D." (3) "The ALJ erred by failing to mention, consider, or weigh a third party statement prepared by plaintiff's husband." [Doc. 18 at Page ID # 1087]. I will consider Plaintiff's challenges to the ALJ's analysis of the various opinions first and Plaintiff's step-two arguments second.

5

## A.    Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (Citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d

690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.    The ALJ's Analysis of the Opinion Evidence

#### 1. Treating Psychologist, Mark Ofenloch, PhD

Dr. Ofenloch is Plaintiff's treating psychologist, and he offered an opinion regarding Plaintiff's mental limitations on September 15, 2015 (Tr. 878-82). At that time, he had been treating her with individual therapy sessions once or twice a month for just under fourteen months. He answered a series of questions, using checkmarks to indicate whether Plaintiff's ability to

7

perform a specific mental task was "Unlimited/Very Good," "Good," "Fair," or "Poor/None."  He

indicated Plaintiff had a good ability to maintain cleanliness and to be aware of normal hazards

and take precautions (Tr. 880-81).  He indicated she had a fair ability to perform all "understanding

and memory" functions, and most "social interaction" functions, except he found her ability to

*maintain* socially appropriate behavior was poor (Tr. 880).  He found her most significant deficits

were in "concentration and persistence" (Tr. 879).  When asked to describe the "medical/clinical

findings" supporting the concentration and persistence part of his assessment, Dr. Ofenloch wrote:

"Significant depression.  Can function okay at times, but not consistently enough to hold a job."

(Tr. 880).  He also found she had poor or no ability to perform certain "adaptation" skills.  When

asked to describe the "medical/clinical findings" supporting the adaption part of the assessment,

Dr. Ofenloch wrote: "See above.  Handles stress + change poorly.  Unable to handle day-to-day

job + other stresses well enough to work." (Tr. 881).  He concluded, however, that she would be

able to manage her own benefits in her own best interest (Tr. 882).

>    The ALJ discussed Dr. Ofenloch's September 2015 opinion as follows:
>
>    In September 2015, Dr. Ofenloch opined that the severity of
>    the claimant's depression "clearly meets the criteria for 12.04 A
>    [and] B", that the claimant is "unable to handle [a] day-to-day job
>    [and] other stresses well enough to work", that the claimant "can
>    function okay at times but not consistently enough to hold a job",
>    and that the claimant has poor to no ability to complete numerous
>    basic mental work activities.  The undersigned gives Dr. Ofenloch's
>    [opinion] little weight as it is inconsistent with the claimant's
>    reported functioning throughout the record, it is inconsistent with
>    Dr. Ofenloch's own treatment of the claimant, it is not well
>    supported, it is not specific regarding the claimant's workplace
>    limitations, and it opines on matters reserved to the Commissioner
>    (20 CFR 404.1527(d)).
>
>    For example, Dr. Ofenloch indicates that the claimant has
>    poor to no ability to carry out short and simple instructions, yet the

8

claimant reported to Dr. Ofenloch that she cared for multiple pets and that, with the assistance of an attorney, she has dealt with property she owned in Indiana and that was inhabited by others. Furthermore, despite indicating that the claimant's depression is moderate to severe in his treatment notes, the undersigned has found no evidence that Dr. Ofenloch has ever prescribed or recommended the claimant any medications for depression or that Dr. Ofenloch has ever conducted a formal mental status examination, and Dr. Ofenloch has seen the claimant for fifty-minute therapy sessions approximately once to twice per month since August 2014. In short, the evidence does not support Dr. Ofenloch's September 2015 opinion.

(Tr. 16 (citations to the administrative record omitted; first three alterations in original)).

Elsewhere in the opinion, the ALJ discussed how Plaintiff reported to Dr. Ofenloch in April 2015 "that she had made friends with a neighbor," and "despite her hearing testimony that no one ever visits her," she told Dr. Ofenloch "on numerous occasions that she has had family members from out of town visit her." (Tr. 15). The ALJ also discussed how Plaintiff told Dr. Ofenloch that she and her husband got a new dog in April 2015, took it to the vet multiple times, and then the dog had puppies in December 2015. As the ALJ notes, Dr. Ofenloch wrote that Plaintiff and her husband, who himself receives DIB for physical impairments, "continue to have their hands full at times with her critters. However, we agree that critters are good therapy." (Tr. 18, 936).

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic

9

techniques" and "not inconsistent with the other substantial evidence" in the record.[2] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 404.1527. While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)); *see also Gayheart*, 710 F.3d at 376 (noting that "two conditions" must be met for treating physician to automatically receive controlling weight (citing 20 C.F.R. § 404.1527(c)(2))).

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr*, 616 F. App's at 211 (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citation omitted). If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature and length of the treatment relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R.

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* 20 C.F.R. § 404.1527. In addition, this report cites and quotes to the version of 20 C.F.R. § 404.1527 that was in effect at the time of the ALJ's decision. I **FIND** there are no substantive differences between the two statutes that would affect this report and recommendation. One particular difference is addressed in note 5, below.

§ 404.1527(c)(2)-(6)).  The ALJ is not, however, required to engage in a protracted discussion of

the reasons.  *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-

sentence justification for discounting treating physician's opinion "reach[ed] several of the factors

that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)).

        Plaintiff's position is that the reasons provided by the ALJ to discount Dr. Ofenloch's

September 2015 opinion are either conclusory or not supported by substantial evidence [Doc. 18

at Page ID # 1101-03].  The ALJ found Dr. Ofenloch's September 2015 opinion[3] was "not well

supported," meaning the ALJ was not required to assign the opinion controlling weight.  Plaintiff

argues that the opinion is supported by Dr. Ofenloch's "handwritten comments and observations."

But none of the comments Plaintiff cites show what "medically acceptable clinical and laboratory

diagnostic techniques" Dr. Ofenloch relied on to form his opinion.  He notes a diagnosis of

"significant depression," and then essentially just repeats what he opines her functional limitations

are.  The ALJ clearly credited Dr. Ofenloch's opinion to an extent, as the ALJ agreed Plaintiff had

depression and anxiety as medically determinable impairments, but the pages Plaintiff cites do not

indicate what clinical findings or observations show that her depression was "significant" or that

it caused Plaintiff to have the severe limitations in basic mental work activities opined to by Dr.

Ofenloch.  There are clinical observations in Dr. Ofenloch's treatment notes that could perhaps

provide support for his opinions, but Plaintiff does not rely on them.  Plaintiff also fails to address

the ALJ's finding that Dr. Ofenloch did not perform a mental status exam.

---

[3] I refer to all of the findings in Dr. Ofenloch's September 2015 report as one "opinion," and apply
the "treating physician rule" to the entire opinion.  Nevertheless, as Defendant points out, Dr.
Ofenloch's opinion that Plaintiff meets Listing 12.04A and 12.04B is an issue reserved to the
Commissioner, which is not entitled to any special deference.  20 C.F.R. § 404.1527(d).

More importantly, the ALJ discussed substantial evidence in the record that is inconsistent with Dr. Ofenloch's September 2015 opinion, which also allows an ALJ to discount a treating physician's opinion. For example, the consultative examiner (whose opinions are discussed in more detail below) found on her second exam that Plaintiff had no impairment in her ability to sustain concentration and attention and had mostly average results on memory tests (Tr. 845-46). The ALJ also discussed the activities in Plaintiff's daily life that he found were inconsistent with the severe restrictions found by Dr. Ofenloch, including visiting family out of state, caring for multiple animals including a litter of puppies, and dealing with an attorney concerning a rental property in Indiana.

Plaintiff asks the court to find the ALJ erred because Plaintiff's statements to Dr. Ofenloch concerning the animals and the rental property were not specific enough to show Plaintiff's actual role or responsibility, but the ALJ's interpretation of the evidence is reasonable. For example, in August 2015, Dr. Ofenloch wrote: "Among her other stressors, she reports that the people to whom they had sold their house in Indiana have defaulted on the contract and now they're having to work with a lawyer towards eviction." (Tr. 932). In November 2015, Dr. Ofenloch wrote:

> We agree that she is probably stronger than she was a year ago. She is trying to put things into perspective for herself and her husband. While they have recently regained ownership of the property in Indiana, she just wants them to be done with it, even if it means selling it at a bargain price.

(Tr. 923). This language certainly can indicate joint action/responsibility by Plaintiff and her husband, or at least that Plaintiff played a role in disposing of the property that evidences more than a "poor" or "no" ability to carry out simple instructions. Plaintiff's citation to her Adult Function Report to contradict the ALJ's discussion of the dog and puppies seems somewhat

12

misleading [Doc. 18 at Page ID # 1102]. Although she indicated she did not care for any animals when she completed the report in August 2013 (Tr. 248), the record clearly reflects she acquired a dog sometime in 2015, and was raising puppies in 2015 (Tr. 944, 921).

In addition to supporting the ALJ's determination not to assign Dr. Ofenloch's opinion controlling weight, all of these facts support the ALJ's consideration of several of the applicable factors, including supportability and consistency, and need not be repeated. The ALJ also considered additional factors, like the length and nature of the treatment relationship. The ALJ characterized Dr. Ofenloch's treatment of Plaintiff as conservative, mostly if not entirely because Dr. Ofenloch never prescribed or recommended Plaintiff any medication (Tr. 16). Plaintiff argues this "reason" is not supported by substantial evidence because her primary care doctor handled her medication prescriptions, and she cites to several instances in the record where Dr. Ofenloch discussed Plaintiff's medication with her [Doc. 18 at Page ID # 1103]. Regardless, I **FIND** no error with the ALJ's characterization of the treatment or his reliance on its conservative nature. Dr. Ofenloch's treatment was, in fact, conservative. Plaintiff does not point to any evidence showing Dr. Ofenloch wanted to increase the frequency of the therapy sessions, or attempted to work with her other doctors to figure out what medications could improve her symptoms. At her most recent visit in January 2016, he indicated that he did not intend to make any changes to her current treatment plan, despite her "variable" progress over the previous year and a half (Tr. 915-16), and despite the severe limitations he found she had in September 2015.

The ALJ also stated he discounted Dr. Ofenloch's opinion because it is "not specific regarding the claimant's workplace limitations." (Tr. 16). I agree with Plaintiff that the questionnaire Dr. Ofenloch completed does cover specific basic mental work activities. *See* 20

13

C.F.R. § 404.1521 (subsection (b) in version effective Mar. 5, 1985 to Mar. 27, 2017) (Examples of basic work activities include "(3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."). Nevertheless, because the ALJ's other stated reasons are well-supported, this error, if standing alone, would be harmless.

Plaintiff also makes a passing reference to the fact that the ALJ did not "address or attempt to explain why all of the other opinions offered by Dr. Ofenloch were inconsistent with the record." [Doc. 18 at Page ID # 1103]. Although she does not specifically identify any such opinions in her argument, earlier in her brief she noted that Dr. Ofenloch assigned her a Global Assessment of Functioning ("GAF") rating of 38 on July 31, 2014 (Tr. 907). The ALJ did not address this rating.

Although the Sixth Circuit previously held ALJs were not required to expressly discuss GAF ratings in their decisions, *see, e.g.*, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citation omitted); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002), it appears such ratings are now to be treated by ALJs as a medical opinion pursuant to the SSA's Administrative Message 13066, Global Assessment of Function (GAF) Evidence in Disability Adjudication, issued July 22, 2013, and revised October 14, 2014 ("AM-13066").[4] AM-13066, which has frequently been cited by courts, directs ALJs that "[w]hen case evidence includes a GAF from a treating source and you do not give it controlling weight, you must provide good

---

[4] Defendant cites *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498 (6th Cir. 2013) (unpublished), which was decided after AM-13066 was issued, and holds "no particular amount of weight is required to be placed on a GAF score." *Id.* at 508 (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). It appears the GAF in *Johnson* was issued by a one-time examiner, not a treating physician. *Id.* at 501.

14

reasons in the personalized disability explanation or decision notice." *Myers v. Comm'r of Soc. Sec.*, No. 1:14-cv-271-HSM-SKL, 2015 WL 9906165, at *6 (E.D. Tenn. December 30, 2015) (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 1:13-cv-00337, 2015 WL 4550329, at *7 (E.D. Tenn. July 28, 2015) (quoting AM-13066)), *report and recommendation adopted*, 2016 WL 297753 (E.D. Tenn. Jan. 22, 2016); *see also Guyaux v. Comm'r of Soc. Sec.*, No. 13-12076, 2014 WL 4197353, at *3 (E.D. Mich. Aug. 22, 2014) (discussing AM-13066).

There are well-known issues with GAF ratings, and "[u]nless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, [the rating] does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Myers*, 2015 WL 9906165, at *6 (quoting *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *9 (E.D. Mich. Mar. 28, 2014) (quoting AM-13066)). Here, however, the ALJ did not even reference the GAF rating assigned by Dr. Ofenloch, much less explain why he believed the opinion was not entitled to much weight. A GAF rating of 38 appears to indicate "severe impairment and lack of functioning." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). This is clearly at odds with the ALJ's findings concerning Plaintiff's mental impairments, and the ALJ's failure to address the rating would require a reviewing court to offer its own post hoc rationalizations as to why he may have discredited it. While perhaps the same reasons the ALJ supplied for discounting the September 2015 opinion could apply to the July 2014 GAF rating, this procedural error should not be overlooked given the other errors addressed herein. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (quotation marks and citations omitted) ("[A] procedural error is not made harmless simply because [the aggrieved

party] appears to have had little chance of success on the merits anyway."). Accordingly, I **FIND** the ALJ committed reversible error in failing to address the GAF rating in this case.

If this report and recommendation is adopted, the ALJ on remand should address and weigh Dr. Ofenloch's GAF rating. Moreover, although the error concerning Dr. Ofenloch's September 2015 opinion is harmless standing alone, the ALJ should reconsider what weight is appropriate for that opinion, particularly in light of whatever weight is assigned to Dr. Ofenloch's GAF rating and the opinions of the consultative examiner (addressed below). The ALJ should also consider the fact that Dr. Ofenloch has offered the only opinions concerning Plaintiff's mental health after March 2014, when Plaintiff reported to the SSA that her "Depression has worsened." (Tr. 284; *see also* Tr. 59-60 (Plaintiff's testimony that although she has suffered from depression her entire life, the depression has worsened since her physical problems started)).

### 2. Consultative Examiner Caryn Brown, Psy. D., HSPP

Dr. Brown performed two psychological consultative exams on Plaintiff. The first one was performed on November 29, 2013 (Tr. 840-43). Dr. Brown noted Plaintiff "said her disability is primarily physical in nature"; and when asked about "a history of mental health treatment," Plaintiff responded, "'Do I have to answer that? I don't worry about myself mentally cause I am never alone. I would never hurt myself.'" (Tr. 841). On mental status examination, Dr. Brown found Plaintiff was oriented to person, place, and time; could provide meaningful interpretations of proverbs; and had an "okay" fund of information, "fair" mathematical reasoning skills, "okay" practical judgment, and a "cooperative" behavioral tone (Tr. 841-42). However, Dr. Brown also noted that during the exam, Plaintiff "tearfully explained" how she used to pay all her household bills, but had become unable to because she loses "her train of thought." (Tr. 840-41). Plaintiff

16

was unable to complete serial sevens, and Dr. Brown found Plaintiff "demonstrated impairment in her ability to sustain her concentration and attention," and "may need assistance managing her funds" (Tr. 842-43).  Dr. Brown diagnosed Plaintiff with depressive disorder not otherwise specified and rule out cognitive amnestic disorder, with a GAF rating of 55.  She concluded "the results provide a valid and reliable assessment of Ms. Beckett's functioning." (Tr. 843).

About three weeks later, on December 19, 2013, Dr. Brown performed a second consultative exam (Tr. 845-47).  This time, Dr. Brown found Plaintiff "demonstrated no impairment in her ability to sustain her concentration and attention," and that Plaintiff "appears capable of managing her funds" (Tr. 845-46).  She found Plaintiff's ability to listen to oral information and recall it immediately and after a 20- to 30-minute delay was "in the Average range," as was Plaintiff's ability to hold and manipulate spatial locations and visual details.  She found Plaintiff's "ability to recall verbal and visual information immediately after the stimuli is presented" was in the "Low Average range," but her ability to do so after a 20- to 30-minute delay was in the "Average range" (Tr. 846).  She concluded Plaintiff's test results did "not support an Amnestic Disorder or Cognitive Disorder diagnosis." (Tr. 846).  She did not discuss her previous opinion about Plaintiff's depression, nor did she assign Plaintiff a new GAF.

The opinions of consulting and non-examining doctors are not subject to the treating physician rule.  *See e.g., Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015) (citation omitted); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274-75 (6th Cir. 2015).  Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ must evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2)-(6), the same factors used to analyze the opinion of a treating physician.  *See* 20

17

C.F.R. § 404.1527(c). "Unless a treating source's opinion is given controlling weight," the ALJ "must explain in the decision the weight given to the opinions of . . . nontreating sources." *Id.* § 404.1527(e)(2)(ii);[5] *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 837 n.8 (6th Cir. 2016) (citing 20 C.F.R. § 404.1527(c), (3)(2)(ii));[6] *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency." (citation omitted)).

Here, the opinion of Dr. Ofenloch was not given controlling weight. Plaintiff argues the ALJ therefore committed harmful error by failing to "mention, consider, or weigh" Dr. Brown's reports [Doc. 18 at Page ID # 1106]. The ALJ discussed the December 2013 report (Tr. 15), and he quoted one aspect of the November 2013 report (Tr. 16 (citing the November 2013 report and noting that, "at the psychological consultative examination, the claimant reported that 'her disability is primarily physical in nature'")). These references clearly show the ALJ reviewed Dr.

---

[5] The current version of 20 C.F.R. § 404.1527, which became effective March 27, 2017, well after the ALJ's decision, requires every opinion be evaluated but it does not expressly state that an explanation of the weight given to a consultative examiner is required. In updating the regulations, the SSA clearly evidenced an intent to expand the explanation requirements for ALJs. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, at *5844 ("we are revising our rules to state that our adjudicators will articulate how they consider medical opinions from all medical sources, regardless of whether the medical source is an [acceptable medical source]"). Accordingly, in modifying the text of 20 C.F.R. § 404.1527, there is no reason to believe the SSA intended to eliminate the existing explanation requirement for claims filed prior to March 27, 2017.

[6] *Miller* thus appears to contradict *Johnson* to the extent *Johnson* held that an ALJ's failure to address a GAF rating from a consultative examiner was harmless, *see* 535 F. App'x at 508. *See* note 4, above.

Brown's reports, but Plaintiff is correct that the ALJ did not expressly assign any particular weight to either opinion, nor did he otherwise explain how he evaluated the opinions using the relevant factors, or address the contradictions between the two.

Defendant acknowledges that "an ALJ will consider and weigh all medical opinions in conjunction with any other relevant evidence received in order to determine a claimant's RFC" [Doc. 22 at Page ID # 1134 (citing 20 C.F.R. § 1527(b), (c))]. Defendant's position is that Dr. Brown's reports do not constitute "medical opinions" that must be "weighed." Defendant argues "medical opinions" are limited to "statements about what you can do," and that Dr. Brown merely "provided a medical history, clinical findings, and a diagnosis" [*id.* at Page ID # 1135]. I **FIND** Defendant's argument to be weak. Defendant cites 20 C.F.R. § 404.1513(b)(6),[7] which discusses "medical *reports*," and provides that such reports "should include . . . [a] statement about what you can still despite your impairment(s)"; 20 C.F.R. § 1513(c)(1), which further explains what a "[s]tatement about what you can still do" should include; 20 C.F.R. § 416.913(c)(2), which applies to Supplemental Security Income claims; and the fact that the State agency consultants who reviewed Plaintiff's paper file did not characterize Dr. Brown's reports as "opinions" [*id.* at 1134-36]. None of these indicates that a medical opinion is strictly limited to a "statement about what you can still do."

Instead, 20 C.F.R. § 1527(a)(2) defines "medical opinions," as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and

---

[7] Both parties cite the version in effect at the time of the ALJ's decision; the current version does not have a subsection (b)(6) or (c)(1). To evaluate Defendant's argument, I therefore do the same. The current version of 20 C.F.R. § 404.1513 states that, for claims filed before March 27, 2017, the definition of "medical opinion" in 20 C.F.R. § 1527(a) should be used.

severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 1527(a)(2). Dr. Brown made diagnoses and opined as to Plaintiff's mental restrictions. She also assessed a GAF rating. Both of her reports therefore constitute "medical opinions." Accordingly, the ALJ was required to "evaluate" Dr. Brown's opinions, and because the ALJ did not assign controlling weight to a treating physician, he was required to "consider" all of the same factors required for evaluation of a treating physician opinion, and "explain in the decision the weight given" to the opinion. *Id.* § 1527(c), (e)(2)(ii); *see also Miller*, 811 F.3d 825 at 836-37, 837 n.8 (citations omitted); *Sommer*, 2010 WL 5883653, at *6 (citation omitted). While the ALJ was not necessarily required to give good reasons or discuss each of the factors in detail, at some point in the decision he should have at least given some explanation of how he evaluated Dr. Brown's opinions or how much weight he assigned to the opinions, particularly considering the contradictions between the two.

This error is not harmless in this case. Although Dr. Brown ruled out the cognitive disorder diagnosis she had initially made, she did not indicate that Plaintiff's GAF rating should be modified. A GAF rating between 51 and 60 indicates "moderate symptoms or moderate difficulty in social or occupational functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citing the Diagnostic and Statistical Manual of Mental Disorders, Am. Psychiatric Ass'n, 4th ed. (2000)). Again, this is inconsistent with the ALJ's findings concerning Plaintiff's mental impairments, and the ALJ's failure to address the rating would require reviewing courts to offer their own post hoc rationalization as to why he discredited it.

20

Accordingly, I **FIND** the ALJ committed reversible error in connection with Dr. Brown's reports in this case. On remand, the ALJ should consider and weigh the reports, including the GAF rating.

### 3. Third Party Function Report from Brian Beckett

Plaintiff's husband Brian Beckett completed a Function Report in support of Plaintiff's claim (Tr. 257-64). The ALJ did not mention or discuss the report in his decision, which Plaintiff contends is reversible error, in particular citing SSR 06-03p.

Mr. Beckett is considered an "other source." An ALJ "may" use evidence from "other sources" to show the severity of a claimant's impairments and how they affect the claimant's ability to work. 20 C.F.R. § 404.1513(d). SSR 06-03p provides that when considering this evidence, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." 2006 WL 2329939, at *6 (Aug. 9, 2006). SSR 06-03p goes on to explain: "Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." *Id.*

Mr. Beckett is neither a medical source nor did he see Plaintiff in some other professional capacity. Accordingly, the ALJ did not violate SSR 06-03p. Moreover, there is no requirement that the ALJ's decision explicitly address every piece of evidence in the administrative record, "and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *See, e.g.*, *Weaver v. Comm'r of Soc. Sec.*, No. 3:13-cv-713, 2015 WL 64873, at *10 (E.D. Tenn. Jan. 5,

21

2015) (quoting *Paskewitz v. Astrue*, No. 1:11CV2371, 2012 WL 5845357, at *13 (N.D. Ohio Oct. 29, 2012) (citing *Dykes ex rel. Brymer v. Barnhart*, 223 F. App'x 463, 467 (6th Cir. 2004))). Nevertheless, "[i]f lay witness testimony[8] is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (citation omitted). The failure to do so, however, can constitute harmless error. *See id.* at 810-11 (citations omitted) (Where "no reasonable ALJ, when fully crediting the testimony could have reached a different disability determination," the failure to discuss it was harmless error.).

Courts in this district have found harmless error when a third-party Function Report "is repetitive of the plaintiff's assertions." *Weaver*, 2015 WL 64873, at *10 (citing *Paskewitz*, 2012 WL 5845357, at *14)); *see also Ellis v. Astrue*, No. 3:11-CV-535, 2012 WL 5304203, at *4 (Oct. 4, 2012) (finding no harmful error where an ALJ failed to discuss third party report from claimant's daughter, because, among other reasons, the statements in the report were "basically cumulative"). Plaintiff does not identify anything in Mr. Beckett's Function Report that is not repetitive of Plaintiff's own Function Report or testimony. Plaintiff's counsel at the administrative level declined to have Mr. Beckett testify after admitting that Mr. Beckett did not have any unique knowledge of Plaintiff's condition[9] (Tr. 75 ("ALJ: Is there anything that he has knowledge of that she does not have knowledge of? Atty: No, Your Honor. No.")).

---

[8] I see no reason why a third-party Function Report should be treated differently than testimony in this case. *See Decheney v. Comm'r of Soc. Sec.*, No. 1:13-cv-1302, 2015 WL 4526836, at *9 n.5 (W.D. Mich. July 27, 2015) (rejecting Commissioner's argument that testimony should be treated differently than third-party function report).

[9] Counsel's decision was made on the strong suggestion by the ALJ (Tr. 74-75).

22

Accordingly, I **FIND** no harmful error with the ALJ's failure to explicitly discuss Mr. Beckett's Function Report and I **CONCLUDE** Plaintiff's motion should be denied in this regard. Nevertheless, on remand, the ALJ may, but is not required to, address the report.

### C.    The ALJ's Step Two Analysis

Plaintiff also contends the ALJ erred in failing to find her anxiety and depression are severe impairments at step two [Doc. 18 at Page ID # 1103-06].

Step two is described as a "*de minimis* hurdle" to screen out "totally groundless" claims from a medical standpoint, but it is not automatic. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (citations omitted). To "surmount" this hurdle, Plaintiff bears the burden of "establishing that the administrative record contains objective medical evidence" suggesting that she was disabled during the relevant time period. *Despins v. Comm'r of Sec. Sec.*, 257 F. App'x. 923, 929 (6th Cir. 2007) (citation omitted). The mere existence of a physical or mental impairment does not, of itself, establish that a claimant is significantly limited from performing basic work activities for a continuous period of time. *Id.* at 930 (citations omitted). However, once the ALJ found Plaintiff had medically determinable mental impairments, the ALJ was required to assess the "functionally limiting effects" of these conditions, including "symptom-related limitations," to determine whether the mental impairments are severe. *See* SSR 96-3p, at *2; *see also* SSR 16-3p, at *11 (At step two, "we will consider an individual's symptoms and functional limitations to determine whether his or her impairment(s) is severe unless the objective medical evidence alone establishes a severe medically determinable impairment or combination of impairments that meets our duration requirement.").

23

Moreover, in determining the severity of a mental impairment at steps two and three, the ALJ must follow the regulatory method set forth in 20 C.F.R. § 404.1520a addressing four functional areas. *See* SSR 96-8p.[10]  If the claimant's degree of limitation is none or mild in these areas, the ALJ will conclude the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d) (citation omitted); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) (citations omitted).

The ALJ found Plaintiff's limitations in the first three areas were "mild" and that Plaintiff had no extended episodes of decompensation (the fourth area).  In doing so, the ALJ relied on Plaintiff's testimony and other statements she made to the SSA (particularly concerning her activities of daily living), statements she made to Dr. Ofenloch, the discounted weight assigned to Dr. Ofenloch's September 2015 report, and Dr. Brown's December 2013 findings.  I have found reversible error in the ALJ's failure to address Dr. Ofenloch's July 2014 GAF rating and in the ALJ's failure to weigh Dr. Brown's opinions.  Because their opinions play significant roles in the ALJ's step two analysis, I **FIND** the ALJ's step two analysis is not supported by substantial evidence.

Defendant points out that the ALJ's failure to find Plaintiff's mental impairments severe at step two is not reversible error, as long as the record shows that he considered all of Plaintiff's impairments in the remaining steps of the disability determination.  *Fisk v. Astrue*, 253 F. App'x

---

[10] 20 C.F.R. § 404.1520a has been updated since this case began, and the four functional areas— the "paragraph B" criteria—have changed.  *See* 81 Fed. Reg. 66,138-01, 2016 WL 5341732, at *66167 (Sept. 26, 2016).  The revisions were not in effect at the time Plaintiff applied for DIB or when the ALJ rendered his decision; I therefore apply the former version of the regulation.

580, 583 (6th Cir. 2007) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). The ALJ expressly stated the RFC analysis "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 17). Defendant's point is somewhat circular in this case, however, because the ALJ did not incorporate any mental limitations into Plaintiff's RFC at all (although all of the vocations identified as available to Plaintiff were unskilled, while her work history is semi-skilled). Thus, the question is not whether the accommodations provided for in the RFC cover the limitations created by the non-severe impairments, but whether Plaintiff showed the need for any mental accommodations at all. The ALJ's failure to properly consider significant medical proof showing Plaintiff had at least moderate mental limitations indicates the ALJ's step-two analysis is not supported by substantial evidence when the record as a whole is taken into account.

In *Gilliam v. Astrue*, this Court remanded an ALJ's decision, reasoning:

> A fair trial in a fair tribunal is a basic requirement of due process, and this applies to administrative agencies which adjudicate as well as to courts. The ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge. Irrespective of the particular merits of a case, and irrespective of any apparent credibility issues, Social Security claimants are entitled to "a careful evaluation of the medical findings . . . and an informed judgment . . . ." *See, e.g.*, SSR 96-3p, 1996 WL 374181, at *2 (July 2, 1996). As part of any "careful evaluation" and "informed judgment," an ALJ is required to set forth a valid basis for rejecting the opinions of treating, examining, and nonexamining sources. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987); 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The discrepancies in the decision below are not suggestive of "careful evaluation" or "informed judgment." Rather, the decision is imprecise to the point of being essentially unreviewable.

No. 2:10-CV-017, 2010 WL 2837260, at *3 (June 19, 2010) (some quotation marks, alterations, and citations omitted). The deficiencies in this case are not nearly as stark as in *Gilliam*, but they do require remand in my opinion. If the other recommendations herein are adopted, the ALJ should be ordered to revisit his step two analysis.

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND**:[11]

1) The Clerk be directed to **TERMINATE** Docket No. 15;

2) Plaintiff's motion for summary judgment [Doc. 17] be **GRANTED IN PART** for the reasons stated herein;

3) The Commissioner's motion for summary judgment [Doc. 21] be **DENIED**; and

4) The Commissioner's decision denying benefits be **REVERSED AND REMANDED** for further proceedings consistent with this report and recommendation.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[11] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

26